UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MOHAMED HASHEM, individually, )<br>and as an officer, director, shareholder, )<br>member and/or principal of )<br>JOHN DOE ENTITY d/b/a )<br>Capri the Food Island, )<br>)<br>    Defendant. ) | No.: 3:20-CV-308-TAV-HBG |

**MEMORANDUM OPINION**

This civil action is before the Court on plaintiff's Motion for Default Judgment [Doc. 11]. In this action, plaintiff seeks to hold defendant Mohamed Hashem ("Hashem") liable for, *inter alia*, a violation of the Communications Act of 1934 (the "Act"). At this juncture, plaintiff moves for a default judgment against Hashem pursuant to Federal Rule of Civil Procedure 55(b)(2) for Hashem's failure to answer or otherwise defend this action. For the reasons stated below, the Court will **GRANT** plaintiff's motion [Doc. 11].

**I.    Background**

The Court takes as true the factual allegations in the complaint. *Bogard v. Nat'l Credit Consultants*, No. 1:12 CV 2509, 2013 WL 2209154, at *3 (N.D. Ohio May 20, 2013). Plaintiff distributes and licenses broadcasts of sporting events to commercial establishments [Doc. 1 ¶ 4]. At all relevant times in this action, Hashem "was an officer, director, shareholder, member or principal of" and "had the right and ability to supervise

and an obvious and direct financial interest in the activities of" previously-dismissed entity defendant John Doe Entity, which operated an establishment known as Capri The Food Island (the "Establishment") [*Id.* ¶¶ 7–9].

Plaintiff had the exclusive right to distribute to commercial establishments broadcasts of "the *Floyd Mayweather, Jr. vs. Conor McGregor* boxing match, including all undercard bouts and commentary" (the "Fight") [*Id.* ¶¶ 5–6]. Accordingly, Hashem could only have legally broadcasted the Fight at the Establishment by contracting with plaintiff and paying plaintiff's licensing fee of $3,700 [*Id.* ¶ 11]. However, Hashem and/or his agents evaded this licensing fee and obtained the Fight by interfering with cable and satellite signals [*Id.* ¶¶ 11–12]. To verify Hashem's illegal actions, on the night of the Fight, plaintiff's auditor visited the Establishment [Doc. 11-2 p. 7]. While there, the auditor noted the following: (1) the Establishment's doorperson required patrons to pay a $10 cover charge to enter the Establishment; (2) the Establishment broadcasted the Fight on an approximately 80x80-inch projection screen; (3) the Establishment's approximate capacity was sixty to eighty individuals; and (4) approximately twenty-eight patrons were present [*Id.* at 7–8].

The complaint alleges Hashem intercepted the broadcast willingly, "to receive the [Fight] for free or at a nominal cost," for his "own economic gain," and "for the commercial purpose of attracting paying customers, patrons, members, and guests . . . ." [Doc. 1 ¶¶ 14–15]. Plaintiff avers Hashem's actions caused plaintiff to suffer financial harm via a lost licensing fee, incalculable lost profits, diminished goodwill, and other financial harm,

and plaintiff provides affidavits of its President and attorney in support of its losses [Doc. 11-1 pp. 6–13; *see* Doc. 11-2 pp. 1–4; Doc. 11-3 pp. 1–2]. Plaintiff also provides a news article and screenshots from Facebook, which demonstrate that Hashem owns and manages the Establishment and that he advertised that the Establishment would broadcast the Fight [Doc. 11-3 pp. 4–10].

Consequently, on July 14, 2020, plaintiff filed its complaint against Hashem and John Doe Entity asserting claims based on Hashem's alleged unlawful broadcasting of the Fight, including a cause of action under the Act [*See* Doc. 1]. Over one year later, plaintiff applied to the Clerk of Court for an entry of default as defendants failed to respond or otherwise defend in this action [Doc. 9], and the Clerk entered default on August 18, 2021 [Doc. 10].[1] On October 18, 2021, plaintiff dismissed its claims against John Doe Entity [Doc. 13]. Thus, plaintiff's instant motion seeks a default judgment solely against Hashem [*See* Doc. 11; Doc. 11-1 p. 1]. The Court notes plaintiff's memorandum indicates plaintiff only seeks a default judgment as to his claim under the Act [Doc. 11-1 p. 5 n.1].

## II. Analysis

Federal Rule of Civil Procedure 55 "contemplates a two-step process for obtaining a default judgment against a defendant who has failed to plead or otherwise defend." *Banner Life Ins. Co. v. Columbia State Bank*, No. 3:19-CV-119, 2020 WL 3977635, at *1 (E.D. Tenn. July 14, 2020). "First, pursuant to Rule 55(a), a plaintiff must request from

---

[1] This initial entry of default suggested there was only one defendant in this action [Doc. 10]. However, the Clerk entered an amended entry of default on October 18, 2021, to clarify that the Clerk had entered default against both defendants [Doc. 12].

the Clerk of Court an entry of default, describing the particulars of the defendant's failure to plead or otherwise defend." *Id.* If the Clerk enters default, "the plaintiff must then move the Court for entry of default judgment pursuant to Rule 55(b)." *Id.*

After the Clerk has entered default, the court must take the complaint's factual allegations as true. *Bogard v. Nat'l Credit Consultants*, No. 1:12 CV 2509, 2013 WL 2209154, at *3 (N.D. Ohio May 20, 2013); *see also Nat'l Satellite Sports, Inc. v. Mosley Ent., Inc.*, No. 1-CV-74510-DT, 2002 WL 1303039, at *3 (E.D. Mich. May 21, 2002) ("For a default judgement, well-pleaded factual allegations are sufficient to establish a defendant's liability."). However, the court must determine whether the factual allegations "are sufficient to state a claim for relief as to [the] cause of action for which the plaintiff seeks default judgment." *J & J Sports Prods., Inc. v. Rodriguez*, No. 1:08-CV-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008); *see also Harrison v. Bailey*, 107 F.3d 870 (6th Cir. 1997) (unpublished table decision) ("Default judgments would not have been proper due to the failure to state a claim against these defendants."). Although the court takes factual allegations regarding liability as true, the plaintiff must prove the amount of damages. *Bogard*, 2013 WL 2209154, at *3.

Thus, the Court must first consider whether plaintiff has alleged a claim for relief before turning to the issue of the proper remedy.

### A. Sufficiency of the Complaint

Plaintiff alleges Hashem is liable under §§ 553 and 605 of the Act [Doc. 1 ¶¶ 18–21]. However, plaintiff correctly indicates that when a defendant is liable for

4

violating both of these sections, the plaintiff may only recover under either section. *See J & J Sports Prods., Inc. v. Burgess*, No. 3:15-CV-721-JHM, 2017 WL 1788686, at *2 (W.D. Ky. Apr. 10, 2017), *R. & R. adopted*, 2017 WL 1788674 (W.D. Ky. May 4, 2017) ("[T]he majority view is to permit . . . recovery [under § 605] because the provision allows for greater recovery by plaintiffs." (citations omitted)). Here, plaintiff elects to recover under § 605 [Doc. 11-1 p. 5]. Thus, the Court need only consider whether the complaint sufficiently alleges a § 605 claim.

Section 605(a) provides, "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. . . ." 47 U.S.C. § 605(a). This "provision applies to encrypted satellite transmissions." *Joe Hand Promotions, Inc. v. Rizzi*, No. 12-2526, 2013 WL 6243824, at *3 (W.D. Tenn. Dec. 3, 2013) (citation omitted). The Sixth Circuit applies a three-part test to determine whether a defendant violated § 605(a); namely, courts consider whether: "(1) the plaintiff had a propriety interest in the communication; (2) the defendant intercepted that communication; and (3) the defendant unlawfully divulged the communication to its patrons." *Joe Hand Promotions*, *Inc. v. Turner*, No. 3:19-CV-12, 2021 WL 1383267, at *3 (S.D. Ohio Apr. 13, 2021) (citing *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 914–17 (6th Cir. 2001)). Section 605 provides for strict liability; therefore, a plaintiff need not prove a defendant's intent to violate the statute.

*J & J Sports Prods., Inc. v. Sutton*, No. 3:17-CV-264-TBR, 2018 WL 297597, at *2 (W.D. Ky. Jan. 4, 2018).

The Court finds that the complaint sufficiently alleges that Hashem violated § 605(a). First, the complaint alleges plaintiff had a propriety interest in the Fight as it alleges plaintiff had "the exclusive right to commercially distribute" the Fight and that plaintiff distributed the fight to licensees only after it received a licensing fee [Doc. 1 ¶¶ 5, 10]. Second, the complaint alleges Hashem illegally obtained the Fight by, *inter alia*, "intercepting and redirecting cable or satellite service from a nearby residence" [*Id.* ¶ 12]. Third and finally, the complaint alleges Hashem unlawfully divulged the Fight as it alleges Hashem "exhibited the Program for" commercial purposes and without plaintiff's consent [*Id.* ¶¶ 15–16]. Moreover, the complaint alleges Hashem did not contract with plaintiff and did not pay the licensing fee, and therefore, that Hashem had no authority to receive or broadcast the Fight [*Id.* ¶¶ 11, 16]. Thus, the Court finds the complaint sufficiently alleges a § 605(a) violation. *See Turner*, 2021 WL 1383267, at *3 (applying this three-part test and finding § 605 liability in a nearly identical case); *Joe Hand Promotions, Inc. v. Dewberry*, No. 19-CV-12218, 2020 WL 2764604, at *3 (E.D. Mich. May 28, 2020) (same); *see also Sutton*, 2018 WL 297597, at *2 (finding the defendant violated § 605 when the defendant intercepted signals to broadcast a fight, an investigator witnessed the program's exhibition at the defendant's club, and the owner advertised the fight on Facebook).

Furthermore, even if the complaint had not alleged Hashem personally intercepted the Fight, the complaint adequately alleges Hashem's vicarious liability. "To establish

6

vicarious liability for a violation of § 605(a) . . . a plaintiff must show that the defendant had 'a right and ability to supervise the violations, and that she had a strong financial interest in such activities.'" *Rizzi*, 2013 WL 6243824, at *5 (citation omitted). Here, the complaint alleges that Hashem owned the Establishment, "was an officer, director, [or] shareholder" of the Establishment, "had the right and ability to supervise . . . the activities of the Establishment," and that Hashem or his agents intercepted the Fight for his "own economic gain" [Doc. 1 ¶¶ 8–9, 15]. *See Dewberry*, 2020 WL 2764604, at *3 (holding the defendant was vicariously liable in a nearly identical case because he was the sole owner of the establishment and, because of his default, he admitted that he had the right and ability to supervise and a financial interest in the violation); *Rizzi*, 2013 WL 6243824, at *5 (holding the defendant was vicariously liable when the defendant owned the premises and therefore per se had the "right and ability to supervise the violations and the requisite financial interest" even though he was not present during the violation).

Consequently, the Court finds that the complaint sufficiently alleges that Hashem violated § 605. Therefore, the Court will turn to the proper remedy.

### B. Damages, Attorneys' Fees, and Costs

Plaintiff seeks statutory and enhanced damages, attorneys' fees, and costs. Although the Court must take as true the factual allegations regarding liability in the complaint, plaintiff must prove the appropriate amount of damages. *Bogard v. Nat'l Credit Consultants*, No. 1:12 CV 2509, 2013 WL 2209154, at *3 (N.D. Ohio May 20, 2013). In determining damages, "[t]he Court may rely on affidavits [and other materials] submitted

7

by plaintiff . . . without the need for a hearing." *Dirs. of the Ohio Conf. of Plasterers & Cement Masons Combined Funds, Inc. v. Akron Insulation & Supply, Inc.*, No. 5:16-CV-1674, 2018 WL 2129613, at *5 (N.D. Ohio May 8, 2018).

### 1. Statutory Damages Under § 605(e)(3)(C)(i)(II)

Plaintiff seeks $3,700 in statutory damages under § 605(e)(3)(C)(i)(II) [Doc. 11-1 pp. 5–6].

Section 605(e)(3)(C)(i)(II) provides, "the party aggrieved may recover an award of statutory damages for [a § 605(a) violation] in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." 18 U.S.C. § 605(e)(3)(C)(i)(II). In calculating damages, the Sixth Circuit courts "typically consider the price the defendant(s) would have had to have paid to obtain the right to receive and display a broadcast, as well as the plaintiff's cost to police its broadcasting rights in the area." *Joe Hand Promotions, Inc. v. Dewberry*, No. 19-CV-12218, 2020 WL 2764604, at *3 (E.D. Mich. May 28, 2020) (collecting cases). These courts also consider other factors, "including the number of patrons at the time of the violation, the seating capacity of the establishment, the rate charged by the plaintiff for the broadcast, whether the defendant charged a cover to patrons or was likely to have obtained significant profits in another manner." *Joe Hand Promotions, Inc. v. Truong*, No. 3:19-CV-701, 2020 WL 7014303, at *4 (M.D. Tenn. May 20, 2020) (citation omitted).

The Court finds that $3,700 is a reasonable and just award of statutory damages. Plaintiff alleges that "[h]ad Defendant legally licensed the Event from Plaintiff, the

8

licensing fee would have been $3,700" [Doc. 11-1 p. 6]. Plaintiff substantiates this claim with evidence from multiple sources proving that the fee would have indeed been $3,700 [Doc. 11-2 pp. 2, 6–8]. Therefore, Hashem would have had to pay $3,700 "to obtain the right to receive and display" the Fight. *See Dewberry*, 2020 WL 2764604, at *3. The Court also notes this sum is just considering that the Establishment's capacity was sixty to eighty individuals, twenty-eight individuals were present, and Hashem charged patrons a cover charge to enter the Establishment [Doc. 11-2 pp. 3–4, 6–8]. *See Truong*, 2020 WL 7014303, at *4.

The Court further considers that plaintiff's actual losses are likely even greater than $3,700 because plaintiff only requests the lost licensing fee and not collateral losses. For example, plaintiff has suffered lost profits in an incalculable sum because plaintiff loses fees from commercial establishments that choose not to license broadcasts because they cannot compete with establishments that illegally obtain programming [*See* Doc. 11-1 at 7–8]. Additionally, plaintiff substantiates via affidavit from its President that plaintiff has suffered harm to its reputation and goodwill [*See id.* at 8; Doc. 11-2 p. 4]. This is so because when plaintiff licenses broadcasts to legitimate customers, it represents the locations of other authorized licensees [*See* Doc. 11-1 p. 8]. And therefore, when individuals unlawfully intercept plaintiff's programming, it appears that plaintiff made misrepresentations about the identities of other authorized licensees [*See id.*]. Finally, the Court notes that courts have made similar awards in similar cases. *See, e.g.*, *Dewberry*, 2020 WL 2764604, at *3–4; *see also Joe Hand Promotions*, *Inc. v. Turner*,

9

No. 3:19-CV-12, 2021 WL 1383267, at *4 (S.D. Ohio Apr. 13, 2021) (collecting cases in the Sixth Circuit where courts awarded statutory damages equal to the lost licensing fee).

Therefore, the Court finds $3,700 is an appropriate statutory damages award.

### 2. Enhanced Damages Under § 605(e)(3)(C)(ii)

Plaintiff seeks $18,500 in enhanced damages under § 605(e)(3)(C)(ii) [Doc. 11-1 pp. 8–11].

Section 605(e)(3)(C)(ii) provides a court with discretion to provide enhanced damages in an amount up to $100,000 when the violation was "willful[] and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Thus, the Court must first determine whether Hashem's conduct was willful and for a commercial advantage or private financial gain before determining the appropriate amount of damages. *See id.*

The Court first finds that Hashem's conduct was willful. Conduct is "willful" when it demonstrates "disregard for the governing statute and an indifference for its requirements." *Joe Hand Promotions, Inc. v. Dewberry*, No. 19-CV-12218, 2020 WL 2764604, at *5 (E.D. Mich. May 28, 2020) (citation omitted). By virtue of default, Hashem has admitted his violation was willful [*See* Doc. 1 ¶ 14]. *See Joe Hand Promotions, Inc. v. M & J Ballpark Inc.*, No. 15-CV-14484, 2016 WL 4750087, at *3 (E.D. Mich. Sept. 13, 2016) (citing *J & J Sports Prods., Inc. v. Tonita Rest., LLC*, No. 5:13-CV-382, 2015 WL 9462975, at *4 (E.D. Ky. Dec. 28, 2015)). Moreover, in this type of case, the Court can imply Hashem's willfulness because "[s]ignals do not descramble spontaneously, nor do

10

television sets connect themselves to cable distribution systems." *See J&J Sports Prods., Inc. v. Ramirez*, No. 3:16-CV-142-DJH, 2017 WL 4570310, at *3 (W.D. Ky. Apr. 10, 2017) (citation omitted). Additionally, the evidence demonstrates Hashem's actions were willful as Hashem charged patrons a cover charge to enter the Establishment and advertised the event on Facebook. *See J & J Sports Prods., Inc. v. SJV Invs.*, No. 16-CV-12271, 2017 WL 218079, at *3 (E.D. Mich. Jan. 19, 2017) (holding the defendants' violation was willful when they implemented a cover charge and advertised an event).

The Court further finds that Hashem's actions were for a commercial advantage and/or private financial gain. As with willfulness, Hashem has admitted his violation was for a commercial advantage and private financial gain by virtue of default [Doc. 1 ¶¶ 12, 14–15]. *See M & J Ballpark Inc.*, 2016 WL 4750087, at *3 (citing *Tonita Rest., LLC*, 2015 WL 9462975, at *4). Furthermore, the evidence demonstrates Hashem's actions were for private financial gain as he: (1) advertised that the Establishment would broadcast the Fight on Facebook; (2) charged patrons a cover charge to enter the Establishment; (3) and exhibited the Fight on an approximately 80x80-inch projection screen when over two dozen patrons were present. *See Joe Hand Promotions, Inc. v. Sports Page Bar, LLLP*, No. 3:19-CV-161-CRS, 2021 WL 3754551, at *3 (W.D. Ky. Aug. 24, 2021) (finding the defendant's actions were for private financial gain when he advertised the event on Facebook); *M & J Ballpark Inc.*, 2016 WL 4750087, at *3 (finding that the defendant had a commercial purpose under § 605 when he demonstrated a program to fourteen customers on a forty-eight-inch screen).

11

Because Hashem's conduct was willful and for a commercial purpose and/or private financial gain, the Court finds enhanced damages are appropriate. Courts take various approaches to determine the appropriate amount of enhanced damages. *See J & J Sports Prods., Inc. v. Cruisin1, Inc.*, No. 4:17-CV-11155-TGB-DRG, 2019 WL 1584538, at *3 (E.D. Mich. Apr. 12, 2019) (collecting cases and contrasting approaches). But courts generally consider factors similar to those considered in determining the appropriate statutory damages award. *See Joe Hand Promotions, Inc. v. Granada Lounge, Inc.*, No. 11-13062, 2012 WL 447272, at *2 (E.D. Mich. Feb. 13, 2012).

Considering these factors, the Court finds that plaintiff's requested $18,500 amount is excessive. Plaintiff's requested amount is equal to five times his statutory damages award amount. True, in a few cases, courts have awarded enhanced damages in an amount equal to or greater than five times the statutory damages amount [*See* Doc. 11-1 p. 11 (citing two cases)]. *See also Joe Hand Promotions, Inc. v. Rizzi*, No. 12-2526, 2013 WL 6243824, at *3 (W.D. Tenn. Dec. 3, 2013) (awarding enhanced damages in an amount equal to six times the statutory damages award where the defendant was a repeat offender and knew of yet disregarded the "correct process of obtaining authorization"). But the Court finds these cases to be anomalous; most courts in similar circumstances have awarded plaintiffs no more than approximately three times the amount of statutory damages. *See, e.g.*, *Joe Hand Promotions*, *Inc. v. Turner*, No. 3:19-CV-12, 2021 WL 1383267, at *5 (S.D. Ohio Apr. 13, 2021) (enhanced damages award equal to statutory damages); *Sports Page Bar, LLLP*, 2021 WL 3754551, at *3 (enhanced damages award

12

less than statutory damages); *J & J Sports Prods., Inc. v. Club Le'Elegant Corp.*, No. 14-12233, 2015 WL 13050011, at *2 (E.D. Mich. Mar. 31, 2015) (enhanced damages award equal to three times the statutory damages award).

The Eastern District of Michigan's decision in *Dewberry* is markedly analogous to this case and therefore instructive. *See* 2020 WL 2764604, at *4–6. There, the facts were practically identical to the present case: plaintiff sued the defendants for intercepting the Fight, and the court held that $3,700 was an appropriate statutory damages award for many of the same reasons the Court has done so. *See id.* at *1, *3–4. On the issue of enhanced damages, the court noted the defendants charged patrons a cover charge to enter the establishment and advertised the event on Facebook and Instagram. *Id.* at *5. However, the court expressly rejected the defendants' request for the enhanced damages award to be five times the statutory damages award amount. *Id.* at *6. Instead, the court found that an award of two-and-one-half times the statutory damages award amount was appropriate. *Id.* The court in part reasoned that the defendants were not repeat offenders and that such an award was consistent with awards in similar cases. *Id.* (citations omitted).

Like in *Dewberry*, Hashem charged patrons a cover price to enter the Establishment and advertised the event on Facebook. Moreover, like in *Dewberry*, plaintiff has not alleged Hashem has ever previously violated the Act. Consequently, the Court finds that an enhanced damages award equal to two-and-one-half times the statutory damages award is appropriate in this case and will adequately deter future violations of the Act. *See J & J Prods., Inc. v. Strange Clouds Hookah Lounge, Inc.*, No. 17-11300, 2018 WL 783248, at

13

*3 (E.D. Mich. Feb. 8, 2018) (noting that § 605 damages should deter violations of the Act (citation omitted)).

Therefore, the Court finds $9,250—two-and-one-half times the statutory damages award—is an appropriate enhanced damages award.

### 3. Attorneys' Fees and Costs Under § 605(e)(3)(B)(iii)

Plaintiff requests $1,500 in attorneys' fees and $1,000 in costs under § 605(e)(3)(B)(iii) [Doc. 11-1 pp. 12–13]. Section 605(e)(3)(B)(iii) provides, "[t]he court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff substantiates his request with an affidavit from plaintiff's attorney [Doc. 11-3 pp. 1–2].

First, plaintiff seeks $1,500 in attorneys' fees, and this sum is derived from six hours of effort preparing the instant motion at a rate of $250 per hour [*Id.* at 2]. Courts have found comparable and indeed identical attorneys' fees reasonable in similar cases. *See Joe Hand Promotions, Inc. v. Dewberry*, No. 19-CV-12218, 2020 WL 2764604, at *6–7 (E.D. Mich. May 28, 2020); *J & J Sports Prods., Inc. v. Happy Tavern, LLC*, No. 15-13042, 2016 WL 1399255, at *3 (E.D. Mich. Apr. 11, 2016); *Joe Hand Promotions*, *Inc. v. Potopsky*, No. 1:10-CV-1474, 2011 WL 2648610, at *4–5 (N.D. Ohio July 6, 2011). The Court finds plaintiff's requested attorneys' fees award is reasonable here.

Second, plaintiff seeks to recover $1,000 in costs, derived from a $400 filing fee and $600 expended to effectuate service [Doc. 11-3 pp. 1–2]. The Court finds that these costs are reasonable, and plaintiff has substantiated his request [*See id.*].

Therefore, the Court finds that awards of $1,500 in attorneys' fees and $1,000 in costs are appropriate.

## III. Conclusion

For the foregoing reasons, the Court finds plaintiff is entitled to a default judgment as to his § 605 claim against Hashem. Accordingly, plaintiff's motion [Doc. 11] will be **GRANTED**. The Court will **ORDER** that plaintiff recover from Hashem the total sum of $15,450 and post-judgment interest according to law from the date of the contemporaneously-filed judgment order until the amount is paid in full as detailed:

| Statutory Damages | Enhanced Damages | Attorneys' Fees | Costs | TOTAL |
|---|---|---|---|---|
| $3,700.00 | $9,250.00 | $1,500.00 | $1,000.00 | **$15,450.00** |

The Clerk of Court will be **DIRECTED** to **CLOSE** this case. A separate order will enter.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE